# WEBSTER & BAXTER

*v.*

# PIERCE & BARBER.

1. EVIDENCE — *account rendered.* If one party sends gold and drafts to another to be sold for currency, and the latter sells the same and renders an account thereof, stating that there is any sum due the former in currency, that is *prima facie* evidence that there is so much or such sums due to the party for whom the sale was made, in current funds.

2.  CURRENCY — *debts payable in currency.*  Currency is coin, or such bank notes as pass freely in commercial transactions as money, and regarded nearly equivalent to coin.  So it is no discharge of a debtor's liability to offer " stump-tail " or depre: ciated currency for a debt due and owing in currency.

3.  TENDER — *what constitutes.*  Where a debt is due and owing in " currency," an offer to pay it in " stump-tail " or depreciated currency, is not a sufficient tender. To constitute a tender in such case, the debtor must show that he had the currency and offered to pay it.

4.  SAME — *must be kept good.*  And to make the tender available, it must be kept good, and brought into court.

5.  PRINCIPAL AND AGENT — *depreciation of principal's money in hands of agent.* An agent has no right to mix the funds of his principal with his own, and then hold the principal liable for the depreciation of moneys in his hands.  .

6.  If he seeks to make his principal liable for losses on bank failures, or other losses on moneys of his principal, the agent must keep the money of his principal separate and distinct from his own.

APPEAL from the Superior Court of Chicago.

Pierce & Barber instituted their action of assumpsit in the court below against Webster & Baxter.  The declaration contained the common counts for money lent, money had and received, goods sold and delivered, and work and labor.  The defendants pleaded the general issue.

Upon the trial the plaintiffs, to sustain the issue on their part, offered the following account current, to wit:

CHICAGO, April 30th, 1861.

Messrs. PIERCE & BARBER,

In account with WEBSTER & BAXTER.

| Mar. | 5. | By balance as per account ren'd, | | 525 | 73 | |
|---|---|---|---|---|---|---|
| " | 8. | " proceeds as per " " | | 113 | 25 | |
| " | 9. | " " " " " | | 16 | 10 | |
| " | 22. | " " " " " | | 10 | 10 | |
| April | 8. | " Dft. on Marine Bk | 740 00 | | | |
| " | 8. | " " C. S. Dole & Co | 60 00 | 800 | 00 | |
| " | 30. | " proceeds as per account ren'd | | 6 | 47 | |
| | | | | 1471 | 65 | |

### CONTRA.

| | | | | |
|---|---|---|---|---|
| Mar. | 8. | To paid dft. to Palmer & Co........ | 6 00 | |
| " | 15. | " " " Ewing, Briggs & Co. | 36 93 | |
| " | 27. | " " " S. Willard......... | 18 80 | |
| April | 3. | " dft. sent W. W. Pierce, 350, prem. 4 per cent., 14 00 ...... | 364 00 | |
| " | 9. | " dft. sent W. W. Pierce, 600, prem. 6 per cent., 36 00 ....... | 636 00 | |
| " | 25. | " paid dft. favor H. & Ulrich.... | 19 50 | |
| " | 25. | " 1 bbl. 15c D. Apples, 117 lbs. a 3½ | 4 24 | |
| " | 30. | " paid dft. favor Day, Allen & Co. | 69 50 | |
| | | | | 1154 97 |

Bal. to your Cr. in currency .......... 316 68

E. & O. E.

The defendants thereupon admitted, in open court, that the same was rendered by them to the plaintiffs on the day of its date.

*Charles H. Reed* testified, on behalf of the plaintiffs, that he presented the account, as rendered, to the defendants on the 10th of May, 1861. They offered to pay in " stump-tail," known at that time as currency or Illinois bank notes of depreciated value. They refused to pay in anything else.

The plaintiffs thereupon rested their case.

*S. H. Smith*, a witness on behalf of the defendants, testified: I know Pierce, one of the plaintiffs, and know the defendants ; have been in the employ of the defendants for five years ; the transactions between the parties were made up mainly of the sales of gold and collections on drafts. The gold was sold at a premium and payment taken in Illinois currency or Illinois bank bills, at that time passing as currency in business transactions, but depreciated below the standard of gold coin, under instructions from the plaintiffs. The plaintiffs were in the habit of drawing from time to time on the defendants, and accepting payment in such Illinois bank bills. No commissions were charged for selling the gold or collecting the drafts. Commissions were charged for selling produce. Business was done

for the plaintiffs for something like a year. The entire commissions during that time I think were $6.27. The defendants are commission merchants, doing business in Chicago. "Stumptail" was worth on the tenth of May about 65 per cent. I was present at an interview between Pierce, one of the plaintiffs, and Webster, one of the defendants, in April, 1861. Webster told him that if they held the currency the plaintiffs must stand the loss from depreciation, that otherwise they must draw it out. Pierce did not draw out the money that was in defendants' hands. Pierce knew that the proceeds of the gold and drafts were at that time put upon defendants' bank account. Such had been the custom throughout the transactions between the parties. Webster & Baxter kept their bank account with B. F. Carver & Co. I don't know that Pierce knew this fact.

And upon the cross-examination the witness testified as follows:

There were at that time some Illinois bank bills which were good, none worth gold, but as good as eastern bills; but few however were in circulation. When Webster told Pierce that he must draw his currency or it would be at his risk, Pierce said that it would be all right. There was no agreement unless it was implied.

And in reply to a question propounded by the judge the witness said:

I know that Pierce understood that the currency was deposited on the defendants' bank account only because it was the custom of commission merchants to keep such money on their own account. I think, although I am not confident, that Mr. Webster told Pierce that it was in bank.

And upon the reëxamination the witness testified as follows:

I have been a clerk for Webster & Baxter for five years. It has been their invariable custom to keep the accounts of their customers in this way. I have never known of their doing otherwise. I am positive that such bank bills were current in all business transactions until the fifteenth or sixteenth of May, 1861. A draft for $21.60 was paid on the eleventh of May in same kind of currency as before.

11 — 35TH ILL.

And the foregoing was all the evidence in the case.

The court gave the following instruction for the plaintiff:

If the plaintiff sent gold and drafts to the defendants to be sold for currency, and defendants sold the same and rendered an account of the same, stating that there was any sum due to the plaintiffs in currency, that is *prima facie* evidence that there was so much or such sum due to plaintiffs in current funds, and to excuse the defendants from liability, defendants must show that they paid over the same, or offered to do so. An offer to pay in stump-tail or depreciated currency on demand, would not excuse the defendants from all liability; if they rely upon a *tender*, they must show that they had the currency, and that they offered to pay it, and they should have continued the offer, and brought money into court, or otherwise kept the tender good. An agent has no right to mix the funds of his principal up with his own, and then hold his principal liable for the depreciation of moneys in his hands. If he seeks to make his principal liable for losses on failure of banks, or other losses on moneys of his principal, the agent must keep the moneys of his principal separate and distinct from his own.

To the giving of which the defendants then and there excepted.

A verdict was found for the plaintiffs, for the sum of two hundred and ninety-five dollars and eight cents, and the defendants moved for a new trial, which was overruled, and judgment was entered upon the verdict. The defendants thereupon took this appeal, and assign for error the giving of the instruction on behalf of the plaintiffs, and the refusal to grant a new trial.

Messrs. GALLUP & HITCHCOCK, for the appellants.

Messrs. KNOX & REED, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The law of this case, on the facts appearing in the record, is so well expressed in the instruction given by the court for the plaintiffs that we deem any other argument unnecessary.

If the plaintiffs sent gold and drafts to the defendants to be sold for currency, and defendants sold the same and rendered an account stating that there was any sum due to the plaintiffs in currency, that is *prima facie* evidence that there was so much or such sum due to the plaintiffs in current funds, and to excuse the defendants from liability the defendants must show that they paid over the same or offered to do so. An offer to pay in "stump-tail" or depreciated currency on demand would not excuse the defendants from their liability. If they rely upon a tender, they must show they had the currency and offered to pay it, and they should have continued the offer and brought the money into court, or otherwise kept the tender good.

An agent has no right to mix the funds of his principal with his own, and then hold his principal liable for the depreciation of moneys in his hands. If he seeks to make his principal liable for losses on bank failures, or other losses on moneys of his principal, the agent must keep the moneys of his principal separate and distinct from his own.

There was no proof that defendants tendered currency, or that they had it to tender. Nor, if tendered, did they keep the tender good and bring the currency tendered into court. A tender to be available must be kept good, and brought into court. *Knox et al.* v. *Light et al.*, 12 Ill. 86; *Marine Bank* v. *Rushmore et al.*, 28 id. 463; *Sheridan* v. *Smith et al.*, 2 Hill (N. Y.), 538; *Brown* v. *Ferguson*, 2 Denio, 196. Numerous other cases might be cited to the same effect.

It was no discharge of the defendants' liability to offer bank notes which were depreciated at least thirty-five per cent. for a debt due and owing in currency. Currency, we have decided, is coin, or such bank notes as pass freely in commercial transactions as money and regarded nearly equivalent to coin. *Marine and Fire Ins. Co.* v. *Tincher*, 30 Ill. 399.

The judgment must be affirmed.

*Judgment affirmed.*

BECKWITH, J., dissenting.