## BEN BRITAIN v. THE STATE.

### No. 3740.   Decided November 20, 1907.

#### 1.—Theft From Person—Evidence—Identification.

Where upon trial ,for theft from the person the evidence showed that defendant was found with two of the silver dollars alleged to have been stolen, and which were marked before the alleged theft took place to entrap the defendant, and there was no question made by defendant as to the identity of this money, there was perhaps no reversible error in the admission of testimony to the effect that after prosecutor recovered these two dollars, he and his friend made experiments by mixing them with other dollars not marked and then identified the same; yet upon another trial this testimony should not be admitted.

#### 2.—Same—Evidence—Self-Serving Declaration—Reasonable Explanation.

Where upon trial of theft from the person the evidence showed that while defendant was under arrest for another offense, he stated to the officer when that officer asked him where he got the money he turned over to the officer, and which included besides said silver dollars some currency, that he had gotten the same in the course of his business; and the defendant, upon being arrested for theft of the alleged money, explained how he came by it honestly, the rejection of this explanation, although somewhat different from his former statement, was error, and the same was not self-serving.

#### 3.—Same—Charge of Court—Reasonable Explanation.

Where upon trial for theft from the person the defendant claimed that he took in the alleged stolen money in due course of business, and that he was running a restaurant in one part of the building and a frosty joint in another part of said building, the court erred in his charge to the jury in submitting defendant's explanation confining the same to money that he had taken in for frosty.

#### 4.—Same—Charge of Court—Reasonable Explanation—Recent Possession of Stolen Property.

Where upon trial for theft from the person the evidence showed that defendant claimed that he took in some of the alleged stolen money in course of his business, and that he ran a restaurant and a frosty joint; and that he found one of the alleged stolen silver dollars on the floor and handed it back to prosecutor, the court should have charged the law of reasonable explanation directly as applicable to these facts, and a charge in the abstract was not sufficient and reversible error; especially where he submitted an issue for acquittal not raised by the evidence.

#### 5.—Same—Indictment—Proof—Variance—Description of Money.

Where the indictment alleged two dollars in money, lawful currency of the United States of America and of the value of two dollars; and the evidence showed two dollars in silver, there was no variance.

Appeal from the District Court of Van Zandt.   Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Nat M. Crawford, Wynne & Collins,* for appellant.—On question of variance: Davis v. State, 32 Texas Crim. Rep., 377; Warren v. State, 29 Texas, 370; Kimbrough v. State, 28 Texas Crim. App., 367.

On question of defendant's explanation, and rejection of testimony thereon: Andrews v. State, 25 Texas Crim. App., 339; York v. State, 17 Texas Crim. App., 441; Lopez v. State, 28 Texas Crim. App., 343. On question of admitting testimony as to identification of the money alleged to have been stolen in absence of defendant: Coker v. State, 35 Texas Crim. Rep., 57.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of theft from the person and his punishment assessed at two years confinement in the penitentiary.

The facts show that appellant was running a "Frosty Joint." He seems to have had a competitor in the Frosty Joint business, and also another one of the witnesses for the State was running a prescription saloon. Of course, this means that all of the concerns were doing business in a local option territory. The facts indicate that there was rivalry between them on account of competition of these joints and the prescription house. A witness by the name of Acker was selected to entrap appellant into committing the alleged theft. They gave him three marked silver dollars for the purpose of having appellant steal same, and in addition gave him a quarter to go to appellant's place of business and drink frosty. Without going into a detail of these matters, this is the conclusion to be reached from the facts. Acker went to appellant's place and spent the quarter by buying two bottles of frosty, he drinking one and appellant the other; the witness became a little boisterous and appellant kicked him out of the front door. Later on Acker went into a rear room of appellant's premises and laid down on the bed, which was spread on the floor and went to sleep; he said he was to play drunk, but he overdid the thing and in fact did get drunk; that when he was drunk he was crazy, and all the other witnesses so testified in regard to his mental status. He states that when he laid down he had the three dollars in his pocket, and when he came to himself he only had one. Appellant complained to another witness of Acker's presence on his bed. This witness being a friend of Acker's, went after him and took him away; that he was very drunk. Acker knew nothing of this, and stated that if this witness took him off of appellant's premises and out of this bed, that he knew nothing of it at all. He was carried, however, to his friend's place of business, who was running a "Frosty Joint" also, and later in the evening he wandered upon the streets and was picked up by an officer and put in jail for being drunk. Appellant was arrested for some other offense and placed in jail. He was asked if he had any money on his person, and in response to this question he took money out of his pockets, some paper currency and $5 or $6 perhaps in silver and handed it to the officer, who asked him where he obtained it. Appellant said he took it in during his course of business through the day. Among this silver were two of the three marked dollars, Acker having the other

dollar in his pocket.    Appellant's theory of this is that one of the dollars Acker passed over the counter in treating others during the day, and one of the dollars he picked up on the floor by the side of his mattress where appellant had been sleeping.    This dollar was returned.    This is perhaps a sufficient statement of the case to discuss the questions.

As the judgment will be reversed on other questions, the refusal of the application for continuance and the overruling of the motion for a new trial for refusing said continuance as well as for alleged newly discovered testimony, will not be discussed as they cannot arise upon another trial as presented.    The witnesses can be obtained.

The State, over objection, was permitted to prove by the witnesses, Mallard and Ezell, that in the evening after defendant was arrested they met in Ezell's saloon, and that Mallard mixed two marked dollars that he had gotten from the defendant with several other dollars, and that Wiley Ezell picked out the two marked dollars from the lot and identified the same.    Appellant urged objection to this as hearsay and acts done and declarations made by officers and other parties in the absence of the defendant.    This testimony is clearly not admissible, but the bill is qualified by the court, in which it is stated there was no question made by defendant but that the money he gave Mallard was the identical money that Ezell and others had marked and turned over to Acker.    Defendant's counsel did r·t even by his manner of cross-examination question this fact, and defendant was not and could not have been prejudiced by such testimony.    Perhaps the court may be correct in stating that under the peculiar circumstances appellant may not have been injured, but that is a matter of speculation, and upon another trial this testimony should not be admitted.    We do not feel called upon to pass upon the question whether under the circumstances stated it would be reversible.

Another bill recites that on the morning after appellant was arrested, and while being carried to the courthouse, after complaint had been filed against him for theft of Acker's money, defendant told him, Mallard, that he had found $1 in silver on or near the bed upon which Acker had lain in his place of business after Jim Roberson had taken him out, and that he had given it back to Acker as he was satisfied that it was his, and he gave it to him the first time he saw him, and that Acker had changed $1 in silver in his house before he put him out of the front door. The State objected to this as self-serving.    Appellant offered this as an explanation of his possession in connection with what he had said the evening before while under arrest for another offense.    As the record presents this matter, we are of opinion this testimony should have gone to the jury.    The evening before he was under arrest for another offense, and stated to the officer, when that officer asked him where he had gotten the money he turned over to him, that he had taken it in in his course of business that day.    This was said with reference to some paper money as well as several silver dollars turned over to the officer.    He had not then been charged with the theft of this money.    Complaint had been filed for another offense, and while taking appellant to the

courthouse the next morning to answer this charge he made the state-
ment included in the bill.   So far as the bill shows, this was the first
time appellant's right to the two particular dollars, with which he was
charged with a fraudulent possession, had been challenged.   Had he been
charged the day before directly by the officer with the theft of these two
dollars from Acker, so as to call his attention to it, and had then denied
the statement the following morning, same might have been objected
to as self-serving.   But as this matter was presented, this seems to have
been the first time his possession of the property was directly challenged;
at least we so understand this bill of exceptions.   Appellant himself testi-
fied on the stand that the facts contained in the statement to the officer
were true; that is, he detailed the same facts before the jury, and desired
in his application for continuance to have a witness by the name of
McNair present to corroborate him as to the dollar picked up on the
floor.   We are of opinion, under the peculiar attitude of this record, this
testimony should have been admitted.

Among other things, the court charged the jury, as follows:   "If you
shall find that the defendant took in the $2 in silver found in his posses-
sion by Tom Mallard in payment for "Frosty" sold to Ed Acker, or if
you have a reasonable doubt thereof, you will consider his explanation as
true and acquit the defendant."   Serious objection is urged to this
charge.   As we understand the facts this charge is not correct and
limits appellant's right to be acquitted on an explanation that he did
not make; he run a restaurant on one side of his house and on the
other he had a "Frosty Joint"; he also sold_confectionery and canned
goods.   His statement to the officer was that he took in the money handed
to the officer, including the $2 in silver alleged to have been stolen, in
his course of business.   He did not confine it to the sale of Frosty any
more than he did to money taken in from serving customers from his
restaurant or selling canned goods, or some of his confectionery.   This
charge from that standpoint was erroneous.   Appellant's contention was
that after the matter was brought to his attention he found one dollar
on the floor near the bed where Acker had been sleeping, and that the
other dollar was passed over the counter in change.   So there is no testi-
mony here indicating that the two dollars were traded to appellant for
Frosty.   The issue, as presented by the testimony, and these different
statements, under the evidence, is that appellant took in the money in
his course of business during the day.   In other words, this included his
business whatever he was doing there in his place of business.   The
other statement was that he found one dollar, and that appellant passed
the other over the counter in treating two or three parties to frosty, in
paying for the frosty, and that appellant himself drank.   There is a
charge at length, in general terms, with reference to reasonabe expla-
nation, etc.   Under Wheeler v. State, 34 Texas Crim. Rep., 350, this
charge may possibly have been correct, but it is more of an abstract way
of presenting the question than a direct charge on the facts.   If appel-
lant took the money in the course of trade, he would not be guilty of

theft from the person as charged in the indictment; if he picked up one dollar from the floor and sold frosty for the other, he would not be guilty of theft from the person. This is the case as made by the facts so far as explanation and appellant's case are concerned. Nowhere is there any evidence that appellant took in $2 for the sale of frosty. We would suggest again, where matters of this sort are to be charged to the jury and are called for by the facts, that direct application of the law to the facts with the reasonable doubt attached should be given in the charge and is the better way of submitting the matter to a jury. Abstract propositions do not usually make the issue clear to the minds of the jurors. But this charge is wrong from any standpoint, because it submits the issue for acquittal not raised by the facts, and left to the jury without law applicable to appellant's testimony and theory of the case.

Appellant urges objection that there is a variance between the allegation and proof as to the character of money. The indictment alleges that there were "two dollars in money, lawful currency of the United States of America and of the value of $2." The evidence is that it was $2 in silver. An examination of the authorities does not sustain this proposition as we understand them. Currency or lawful currency is broad enough under the decisions, as we find them, to include gold and silver as well as what we usually term paper currency.

For the reasons indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Henderson, Judge, absent.