STATE of Missouri, Plaintiff-Respondent,

v.

Elmer Richard HAYES, Defendant-Appellant.

No. 58626.

Supreme Court of Missouri,
En Banc.

Jan. 13, 1975.

John C. Danforth, Atty. Gen., Neil Mac-Farlane, David Robards, Asst. Attys. Gen., Jefferson City, for respondent.

G. William Weier, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-appellant.

FINCH, Judge.

This case, written on recent reassignment, involves a defendant who was convicted on two counts, each of which charged him with robbery in the first degree by means of a dangerous and deadly weapon. After being sentenced to imprisonment for 25 years on each count, the sentences to run consecutively, he appealed to the Missouri Court of Appeals, St. Louis District, which affirmed. Application to transfer pursuant to Art. V, § 10, Mo.Const., V.A.M.S., was sustained and we now decide the case as though received on direct appeal. In so doing, we utilize without quotation marks some portions of the opinion of Judge Simeone in the Court of Appeals. We affirm on both counts.

Defendant, with another inmate, Lawson, broke out of the Washington County jail on January 16, 1972. Deputy Sheriff McLeod was forced into an upstairs cell and locked in. Defendant then located a pistol, returned to the cell where McLeod had been placed, and pointing the gun at him, said, "Give me the keys to your car or I am going to kill you." McLeod turned over his keys. Defendant again locked the deputy in the cell and departed. From that point McLeod could not see his automobile, but immediately thereafter he heard the sound of a car being started. The sound came from the place where his car was parked at the side of the jail. When Mc-Leod was released from the cell, his Chevrolet automobile was gone.

Later in the day defendant and Lawson drove into the driveway of a Mrs. Russell, also in Washington County. Mrs. Russell heard the car drive in and she came out of her house. Appellant came up to her and asked if her husband was at home. When she responded in the negative, defendant pointed a gun at her and said, "I got to have your car keys." Mrs. Russell responded that she would bring them to him. Defendant rejected that idea, put his hand on her shoulder and guided her inside the house. Mrs. Russell found her keys and handed them to defendant. He then pulled the wires from her phone and told her he would kill her if she contacted the sheriff. After defendant left the house, Mrs. Russell locked the door and then from the window saw defendant back her Dodge automobile out of the garage. Lawson then got in the car and they drove off, abandoning the McLeod Chevrolet. A short time later defendant and Lawson were apprehended while driving the Russell automobile.

Defendant's brief on appeal asserts several alleged trial errors as a basis for reversal of his conviction. However, as a prelude to those questions, his brief raises an issue as to submissibility of Count I by suggesting that the evidence was insufficient to show that McLeod's automobile was taken in his presence.

The crime of robbery first degree is the felonious taking of "property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person." Sec. 560.120.[1] This statute has been interpreted with reference to what constitutes "in his presence." In State v. Kennedy, 154 Mo. 268, 55 S.W. 293 (1900), this court sustained a train robbery conviction of defendants who forced an express agent out of a train car,

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

moved the car a quarter of a mile and then opened a safe and took $1000. The court held that the money was taken in the presence of the agent, saying, 55 S.W. l. c. 298:

"* * * In a word, it was a continuous series of acts, all contributing to, and culminating in, the complete crime of robbery, and, in contemplation of law, it was both a taking by violence and force and in the presence of the agent. Greenleaf lays it down that it is sufficient if it be proved that the taking by the robber was actually begun in the presence of the party robbed, though it were completed in his absence. 3 Greenl. Ev. § 228; Merriman v. Hundred of Chippenham, 2 East, P.C. 709; 1 Russ. Crimes, p. 876; 2 Russ. Crimes (Eng.Ed.) p. 91."

Other decisions of this court are in accord. For example, in State v. Williams, 183 S.W. 308 (Mo.1916), a station agent was shot and while lying semi-conscious on the floor could hear the rifling of a money drawer in an adjoining room. A conviction of robbery was affirmed on the theory that the taking was in the presence of the station agent. Likewise, in State v. Gaitan, 442 S.W.2d 530 (Mo.1969), the court upheld a conviction of robbery in the presence of the victims when defendant ordered them out of their car at gunpoint and ordered them to run across a field. As they ran, they heard a door slam. They looked back and saw the car leaving the parking lot where they had been ejected.

We conclude that a submissible case was made. Defendant, by threats and use of a gun, placed the car owner in a jail cell, demanded and took his car keys, and then went from the jail to his car which was parked outside and drove it off. Under the previous decisions cited, this constituted a robbery of McLeod wherein his automobile was taken in his presence.

■ Defendant's first two assignments on appeal relate to Instruction No. 2, the verdict directing instruction, which was as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on January 16, 1972, in the County of Washington, State of Missouri, Glen McLeod was in the lawful possession and custody of a 1961 Chevrolet automobile, and

"Second, that at that time and place the defendant took the property from Glen McLeod against his will by violence to his person, and

"Third, that the defendant took the property with the intent to permanently deprive Glen McLeod of his right to it and to convert it to his own use,

then you will find the defendant guilty of robbery in the first degree in Count One of the Information.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

"If you find and believe from the evidence beyond a reasonable doubt that the defendant committed a robbery in the first degree, as submitted in this Instruction, and that beyond a reasonable doubt he did so by means of a dangerous and deadly weapon, then you will find the defendant guilty of robbery in the first degree by means of a dangerous and deadly weapon, and in your verdict so state.

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on January 16, 1972, in the County of Washington, State of Missouri, Marie Russell owned a 1970 Dodge automobile, and

"Second, that at that time and place the defendant took the property from Marie Russell against her will by violence to her person, and

"Third, that the defendant took the property with the intent to permanently deprive Marie Russell of her right to it and to convert it to his own use,

then you will find the defendant guilty of robbery in the first degree in Count Two of the Information.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

"If you find and believe from the evidence beyond a reasonable doubt that the defendant committed a robbery in the first degree, as submitted in this Instruction, and that beyond a reasonable doubt he did so by means of a dangerous and deadly weapon, then you will find the defendant guilty of robbery in the first degree by means of a dangerous and deadly weapon, and in your verdict so state."

Actually, defendant has not preserved for review any objections to Instruction No. 2. No questions as to its propriety were asserted when the instruction was given. Instruction No. 2 is not referred to in defendant's motion for new trial. The first mention of asserted deficiencies in this instruction appear in defendant's brief on appeal wherein the claims are asserted as plain error under Rule 27.20(c) V.A.M. R. We proceed to examine those contentions.

It is claimed that Instruction No. 2 was erroneous in that it did not require a finding as to Count I that the taking was "in the presence of" Deputy McLeod and as to Count II that the taking was "in the presence of" Marie Russell. Instead, defendant claims that by submitting the issue of whether defendant took the automobiles "from" the victims the court was asking for a finding under the evidence as to whether there was a taking from the victims' persons when obviously the automobiles were not taken from their persons.

We conclude that the word "from", as used in Instruction No. 2, was not limited to and did not require a finding of a taking from the person of the victims. While the statute (§ 560.120) uses both phrases "from his person" and "in his presence" in describing the crime of robbery by taking property from a victim "against his will, by violence to his person, or by putting him in fear of some immediate injury to his person," those phrases are not repugnant or mutually exclusive. State v. Davis, 482 S.W.2d 486, 488 (Mo.1972). Earlier decisions which demonstrate that the phrases are substitutionary or equivalent rather than mutually exclusive, and that a taking in the presence would support a finding of a taking from the person include State v. Craft, 299 Mo. 332, 253 S.W. 224 (1923), State v. Lamb, 242 Mo. 398, 146 S.W. 1169 (1912), and State v. Eddy, 199 S.W. 186 (Mo.1917).[2]

In Craft this court said, 253 S.W. l. c. 227:

" * * * The essential allegations necessary to charge robbery in the first degree are the same in the statute as at common law. Under the latter the words 'in his presence' are by judicial construction held to be substitutionary or tantamount in meaning to the words 'from his person.' "

In Lamb the court said, 146 S.W. l. c. 1169:

" * * * The information charges robbery 'from the person,' while the proof was that it was 'in the presence' of the prosecuting witness. We do not regard this question as a serious one. At common law it was ruled that the charge of robbery from the person was satisfied

---

2. At the time of the incidents involved in these cases, the robbery statute contained both the phrases "from his person" and "in his presence". Such language dates back as far as 1879. Sec. 1302 RSMo 1879.

by proof that the money was taken in the presence of the person."

In Eddy this court affirmed a robbery conviction where the proof was that the victim was forced to lie face down on the floor behind a counter while a cash register located elsewhere in the room was rifled. In considering the sufficiency of the information, the court said this, 199 S.W. l. c. 188:

"The contention of defendant that, as the evidence clearly shows, the money was not taken from Piggott's person, but from the cash register which was in the drug store, is also untenable. While concededly it would have been more in consonance with the evidence adduced to have charged the taking of the money as having been from the presence of the prosecuting witness by putting him in fear, yet both at common law . . . and under our statute, . . ., as well as in other jurisdictions, it has been ruled that the charge in the information of the taking of property from the person is fully met by proof of a taking from the presence of the person robbed . . ., and that such a difference between the evidence and the charge does not constitute a fatal variance." (Citations omitted.)[3]

Although § 560.120 is worded in terms of a taking of property from the person or in the presence of the victim, it is clear that the thrust of our robbery statutes and the distinctive characteristic of the crime of robbery is that violence to the victim or putting him in fear is the means by which the property is taken from his possession or control. The thing which distinguishes robbery from other offenses such as stealing is that the property is in the possession or under the control of the victim in such a manner or to such an extent that violence or putting in fear is used as the

means of taking the property from the victim's possession or control. This is demonstrated, not only by the foregoing Missouri cases, but by decisions such as that in People v. Braverman, 340 Ill. 525, 530–531, 173 N.E. 55, 57 (1930), wherein the court said:

"The words 'taking from the person of another,' as used in the common-law definition of robbery, were not restricted in their application to those cases in which the property stolen was in actual contact with the person . . . but included within their meaning the taking, by force or intimidation from the presence of the person assaulted, of property which either belonged to him or was under his personal control and protection. . . . Nor was it necessary that the property should be in the actual or immediate presence of the owner or custodian. The requirement was that the property should be in the possession or under the control of the individual robbed in such a way or to such an extent that violence or putting in fear was the means used by the robber to take it."

See also Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962); Clements v. State, 84 Ga. 660, 11 S.E. 505 (1890); State v. Calhoun, 72 Iowa 432, 34 N.W. 194 (1887); People v. Cabassa, 249 Mich. 543, 229 N.W. 442 (1930); People v. Crittle, 38 Mich.App. 118, 195 N.W.2d 799 (1972); Hill v. State, 42 Neb. 503, 60 N.W. 916 (1894); Fields v. State, 364 P.2d 723 (Okl.Crim.App.1961); Clark v. State, 87 Tex.Crim. 107, 220 S.W. 100 (1920); State v. Deso, 110 Vt. 1, 1 A.2d 710 (1938).

We conclude that when the instruction submitted the issue of whether the vehicles were taken "from" the named victims, it submitted the issue of whether defendant by a continuous course of conduct, commencing with the taking of the keys by threats and violence and culminating in the

---

3. While the Craft, Lamb and Eddy cases deal with the effect of using one of the statutory phrases in an information when the proof allegedly supports a finding of the other, what the court said about phrases being substitutionary and, in effect, interchangeable is equally applicable to the use of the phrases in instructions.

taking of the respective cars from that immediate vicinity, took the vehicles from the possession and control of the victims. The preposition "from" is adequate to submit a taking from the person or in the presence of the victim. We have no difficulty, and believe a jury would have no difficulty in this case, in understanding that Instruction No. 2 required a finding from the evidence that defendant by violence and against the will of each victim took the automobile from the control and in the presence of the victim.[4]

■ The opinion of the Court of Appeals affirmed on the basis that failure of the instruction to require a finding that the property was taken "in the presence of" the victims was not error since the keys were symbolic of the vehicles, and the taking of the keys from the person of each victim amounted, in legal contemplation, to a taking of the vehicles from the person of the victims. The state's brief suggests that we adopt that theory. We decline to do so. In the first place, adoption of such theory is unnecessary because we hold, as already indicated, that the evidence was sufficient to show that the cars themselves were taken in the presence of the victims and the instruction was adequate to require the jury to so find. Secondly, a theory of robbery by symbolic taking could present some very troublesome and difficult questions. For example, as defendant's brief suggests, if a robber took the car keys but did not go ahead and take the car, it would be difficult to conclude that such proof would sustain a conviction for robbing the victim of his car.[5] Or suppose a robber took at gunpoint the keys to one's safety

deposit box. Would that showing sustain a conviction of robbery of the contents of the box, if, in fact, the contents were not taken; or were taken months later by use of that key? For these reasons, we decline to adopt the suggested symbolic taking theory.

■ Defendant's second attack on Instruction No. 2 is based on his contention that the instruction permitted the jury to convict on both counts for first degree robbery with a dangerous and deadly weapon even if he actually used a gun in only one of the robberies. We find no merit in this contention. The instruction first hypothesizes what the jury must find to convict defendant of robbery in the first degree on Count I. Immediately following is a paragraph which tells the jury that if it finds that defendant committed robbery in the first degree, it should find that it was committed by means of a dangerous and deadly weapon if it finds beyond a reasonable doubt that he did commit the robbery by means of such a weapon. Then, in identical language, except for name of the victim and a description of the automobile, the instruction submits the issue of whether defendant was guilty of robbery in the first degree on Count II and in a following paragraph whether the robbery was committed by means of a dangerous and deadly weapon. We conclude that it is clear that each paragraph submitting the issue of whether a dangerous and deadly weapon was used applies to the submitted robbery which it follows and that a jury would conclude therefrom that it was required to find that such a weapon was used as to both robberies before it could

4. Defendant's brief makes reference to the fact that MAI–CR 7.60, the pattern instruction for robbery in the first, degree, provides for selection between the words "from" and "in the presence of", thereby indicating the need to choose on the basis of whether the evidence shows a taking from the person or in the presence of the victim. MAI–CR 7.60 had not been promulgated when this case was tried and, hence, its use was not mandatory. Furthermore, the court has concluded to amend both MAI–CR 7.60 and 7.62 and make

them consistent with 7.64 (the instruction on robbery, second degree, under § 560.125), which requires only that the jury find that defendant took the property "from" the victim. An order so providing is being entered contemporaneously with the adoption of this opinion.

5. Of course, such problem would not arise if in such case the defendant was charged with robbing the victim of his car keys and that was the issue submitted to the jury.

convict on both of robbery with a dangerous and deadly weapon. We reject this contention of defendant.

It follows that we hold that Instruction No. 2 was not erroneous. Most assuredly, manifest injustice or miscarriage of justice has not resulted therefrom.

■ Defendant's next assignment, again asserted as plain error under Rule 27.-20(c), V.A.M.R., is that the court erred in failing to submit verdict forms to include all possible verdicts. This contention involves Instruction No. 9, which submitted verdict forms for (1) conviction on Count One with acquittal on Count Two, (2) acquittal on Count One with conviction on Count Two, (3) conviction on both Counts, and finally, (4) acquittal on both Counts. The first two verdict forms contained this additional paragraph:

> "We, the jury, do further find that the defendant (did, or did not) commit said crime of robbery by means of a dangerous and deadly weapon."

The third verdict form was followed by an identical paragraph except that it said "crimes of robbery".

Defendant complains that Instruction No. 9 did not permit the jury, after convicting him of robbery on both Counts, to find that he committed one robbery by use of a dangerous and deadly weapon but did not use such a weapon in the other robbery. We are not impressed by this contention. We believe the jury would have understood that it could conclude that a weapon was used in one of the robberies but not in the other and that if it did so find, it would so state in its verdict. We find no reason to conclude that the verdict forms and the court's instruction thereon resulted in manifest injustice or a miscarriage of justice. The only case cited, State v. Cline, 447 S.W.2d 538 (Mo. banc 1969), dealt with an entirely different situation and does not dictate a reversal on this ground.

■ Still another claim of plain error is that the jury verdict was a special verdict which did not contain all necessary elements of the crimes charged and of which defendant was found guilty. Defendant's brief particularizes this assignment by saying that the verdict is special in that it sets out a specific finding that defendant committed the crimes of robbery by means of a dangerous and deadly weapon.

The subject of special verdicts is discussed at some length in State v. Saussele, 265 S.W.2d 290 (Mo. banc 1954). It is clear from that discussion that the verdict in this case was not a common law special verdict. On the contrary, the opinion establishes that this was a general verdict by reason of the fact that it included the words "as charged in Count I of the information" and "as charged in Count II of the information." See also State v. Kennebrew, 380 S.W.2d 293 (Mo.1964).

■ The inclusion of an additional finding after the foregoing general verdict that the robberies were committed with a dangerous and deadly weapon did not change the nature of the verdict. State v. Moore, 80 S.W.2d 128 (Mo.1935), specifically so holds. The finding that the robbery was committed with a dangerous and deadly weapon is not a finding of an element of the crime of robbery but rather is a finding pursuant to § 560.135 made for the purpose of possibly enhancing punishment of one convicted of robbery in the first degree. Such a finding is comparable in nature to the findings which the jury made under the Habitual Criminal Act at the time when those findings were made by the jury rather than by the court as is presently done. The verdict in such instances called for the jury to make a finding as to whether the defendant was guilty of the particular offense charged in the information for which he was being prosecuted and then called for a further finding by the jury as to whether the defendant had a previous conviction or convictions. Such additional finding was not a finding with

**48**

respect to the elements of offenses for which the defendant was being prosecuted at the time but were solely for the purpose of enhancing punishment if the defendant was found guilty of the offense as charged. See State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327 (1951). We conclude that the verdict was in proper form and was not a special verdict.

■ Next, defendant seeks reversal on the basis that the jury was out only six minutes, showing bias and prejudice and a total lack of deliberation by the jurors. The state's evidence was simple and short. Defendant offered no evidence. The case was not complicated. There is nothing in the record to indicate a need for extended deliberations. Even assuming that the length of the jurors' deliberations was correctly timed,[6] we cannot presume bias and prejudice or a failure of the jurors to reach a proper conclusion. State v. Peck, 429 S.W.2d 247, 252 (Mo.1968). See also State ex rel. State Highway Comm'n v. DeLisle, 462 S.W.2d 641, 643–644 (Mo. 1971); Gaskill v. Cook, 315 S.W.2d 747, 757 (Mo.1958).

■ Finally, defendant, in a separate pro se brief, asserts (1) that the information failed to allege that the victims were put in fear, and (2) that the state failed to prove that the victims were subjected to violence. We overrule both of these contentions. Both Counts of the information alleged that the takings were "by violence to the person." That was sufficient. It was not necessary that the information also charge that the victims were put in fear. State v. Broderick, 59 Mo. 318, 321 (1875). There was sufficient evidence to support the charge of violence to the person of the victims. McLeod was attacked, locked in jail and relieved of his car keys at gunpoint. Mrs. Russell was forced at gunpoint to enter her house and turn over her car keys. She was also threatened

with violence. This constituted sufficient proof of acts of violence. State v. Hawkins, 418 S.W.2d 921 (Mo. banc 1967).

We affirm.

All concur.

---

**6.** The transcript does not show the time when the jury retired and when it returned its verdict. The motion for new trial does make this contention, but there was no evidence offered thereon.