STATE of Missouri, Respondent,

v.

Curtis WILLIAMS, Appellant.

No. KCD 28238.

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

J. Arnot Hill, Kansas City, for appellant; Hill & Gamm, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

PRITCHARD, Chief Judge.

By the verdict of a jury, appellant was convicted upon three counts of robbery in the first degree and upon Count IV, for assault with intent to do great bodily harm. The jury set the punishment on the first three counts, respectively, at 20, 5, and 5 years imprisonment. It was unable to agree upon the punishment for Count IV, and the court therefore set it at 30 years imprisonment, and sentences were pronounced in accordance with these punishments, all to run consecutively in the Department of Corrections of Missouri.

Appellant makes seven points for reversal, the first two of which challenge the submissibility of Counts I and II of the indictment because, as contended, there was an absence of evidence that appellant, "or anyone else, robbed or took two dollars ($2.00) in lawful money from Glada Devore [Count I] [and three dollars from Carol Ballieu, Count II] with an unknown caliber revolver loaded with gunpowder and leaden balls."

On the morning of September 16, 1974, four men, armed with knives and guns, entered the Kansas City Baptist Temple, 55th and Blue Ridge Cut-off, forcing its pastor, The Reverend Truman Dollar, and other employees who were in various parts of the church, onto a central area floor. According to Reverend Dollar, some 7 or 8 minutes after he arrived at the Temple at 8:45 a. m., he was on the telephone facing the wall. Two black males entered his office, one very quickly, who reached over and put the telephone down. That person

was identified by him as appellant, and the other had a sword 18 to 22 inches long, the actual blade. The man with the sword hit Reverend Dollar with the flat side of the sword on the head. At the time appellant took a smaller, curved knife to the small of Reverend Dollar's head, saying, "Come on, dude, you're going with us," and appellant told him, "Take us to the money." Reverend Dollar led the two to the reception area where he knew Glada and Elmer L. Calton were counting the previous day's receipts. The men took that money, then forced Calton, who knew the safe combination, to take them into the safe room. Near that area, Reverend Dollar was forced to lie on the floor and a man with a gun pointed it at him, saying, " 'Reverend, this is one time Jesus ain't going to get you through.' " The man took Reverend Dollar's billfold from him at that time. During the course of these events, the accounting secretary, Joyce Gaddie, was shot through the lobe of her left ear. The inventory of loot taken was $13,500.00, which matched that recovered, along with Reverend Dollar's billfold, near an abandoned car the same day, that car being a blue Ford or Mercury seen leaving the Temple parking lot, and which car had been involved in an accident. Three other men in a yellow Volkswagen were apprehended in the Temple parking lot. Appellant was identified by several employees as a participant in the robbery.

As to appellant's first two points, the evidence shows that both Glada and Carol were employees of the Temple and were present at the time of the robbery. Glada was then being held in another area near the safe, and one of the men holding her had a long knife. Carol was forced to lie on the floor; in fact, it appears that all of the employees were being held by the robbers, including a Mrs. Loper, who had been hiding in a closet but was subsequently found there by one of the robbers, and made to lie down. Glada testified that her purse was in another office room and that someone took approximately $2.00 in change from her purse, "They turned my whole purse over and took the change." Carol had a coin purse, containing about

$3.00, lying on a desk, and after the robbers left she saw her purse open and emptied. Neither of these women saw their money taken. It is in this posture of the evidence that appellant contends that the court erred in submitting Counts I and II to the jury. In this contention he is in error because, "In general, it is essential to the commission of the crime of robbery that the taking should be without the consent or against the will of the victim. However, it is not essential that the victim be conscious, or aware of the robbery if conscious, provided *force* is used to render him unconscious or unaware of the taking." 77 C.J.S. Robbery § 21, p. 462. (Italics added.) See also *State v. Hayes*, 518 S.W.2d 40 (Mo.banc 1975), holding 518 S.W.2d at page 45, "The thing which distinguishes robbery from other offenses such as stealing is that the property is in the possession or under the control of the victim in such a manner or to such an extent that violence or putting in fear is used as the means of taking the property from the victim's possession or control." The *Hayes* opinion quotes from *People v. Braverman*, 340 Ill. 525, 530–531, 173 N.E. 55, 57 (1930), which in part is, "Nor was it necessary that the property should be in the actual or immediate presence of the owner or custodian." Here, there is no question but that both Glada and Carol were put in fear and that violence was exercised upon them. Under the authorities, supra, it is of no consequence that the contents of their purses were taken outside their presence, or that no one saw appellant or his accomplices empty the purses. See also *State v. Hampton*, 509 S.W.2d 139 (Mo.App.1974).

◼ Appellant argues further that the indictment alleged that he took $2.00 in *lawful money* from Glada, who testified that some *change* was taken from her purse, and that Instruction No. 6 required the jury to find that Glada owned miscellaneous *U.S. Currency*, and that the proof was therefore insufficient in that "The words 'change' and 'coins' are interchangeable and the word 'currency' refers to paper money." Webster's New International Dictionary, Second Edition, defines "currency" as "That which is in circulation, or passes

from hand to hand, as a medium of exchange, *including coin*, government notes, and bank notes; as the *silver* currency; the note currency." (Italics added.) See similar definitions: *Leonard v. State*, 115 Ala. 80, 82, 22 So. 564, 565 (1897); *Webster v. Pierce*, 35 Ill. 158, 163 (1864); *Brittain v. State*, 52 Tex.Cr. 169, 105 S.W. 817, 819 (1907).

Appellant's first two points are ruled against him.

◼ The next contention of appellant is that the questionnaires sent to prospective jurors contain no reference to the requirement of § 497.130, RSMo (Law 1974), for compiling a jury list that "The list in no case shall contain less than twenty-five thousand names to be selected as nearly as may be equally from the several voting precincts of the county. * * *." The statute goes on to provide that in the selection of names of prospective jurors no examination shall be made into the qualifications of persons selected, except that a suitable questionnaire shall be sent to each. The form of questionnaire is specifically set out in the statute which further provides, "The questionnaire shall be in the following form and none other, without additions or subtractions * * *." Appellant's offer of proof, admitted by the state, does not attack the jury list selection as not being equal from wards and precincts, but only that the questionnaire omits that reference. Adding the reference to wards or precincts would be a statutory violation of the restriction of matters in the questionnaires, as last above quoted. From all that appears here, the provisions of the statute were complied with, and Point III, raising the contention is overruled.

◼ Point IV is that the trial court erred in permitting the state to cross-examine appellant as to whether or not several witnesses lied when they testified against him, because it went beyond direct examination and also required appellant to give his opinion as to the motives of other witnesses in testifying. There was no objection on the ground that the cross-examina-

tion went beyond the scope of direct examination; it is not preserved for review; and will therefore not be further noticed. It has been held permissible in this state "to pit the testimony of the State's witnesses against that of appellant by way of relative comparison, as to which one is telling the truth." *State v. Garner*, 360 Mo. 50, 226 S.W.2d 604, 609[8] (Mo.1950). See also *Iva Ikuko Toguri D'Aquino v. United States*, 192 F.2d 338 (C.A.9th 1951). The cross-examination here merely pointed up the contradictions of the witnesses' versions of the facts and that of appellant. Point IV is overruled.

■ The fifth point is that the trial court erred to appellant's prejudice in failing to give MAI–CR No. 1.08(b) [admonishing the jury] at recesses subsequent to the first recess and at adjournment. It appears that during the four day trial there were four recesses during which the jury retired to the jury room without being given the MAI–CR 1.08(b) admonition, but there was never any objection made to the court's failure to do so. Appellant requests that the matter be considered as plain error under Rule 27.20(c). In a similar situation, the matter was ruled adversely to appellant in *State v. Crawford*, 539 S.W.2d 633, 637[8] (Mo.App.1976), where it was said, "The failure to object at any stage of the trial precludes consideration of this claim under ordinary rules of appellate review. The absence of any showing that the trial court's failure to give the required admonition was prejudicial to appellant precludes reliance upon the plain error rule. (Citing cases.)" Here appellant concedes in his brief that he can point to no prejudice occurring to him by reason of the trial court's failure to admonish the jury at the four recesses. Accordingly, Point V is overruled.

Point VI attacks the submission of Count IV of the indictment [of assault with intent to do bodily harm with malice aforethought upon Joyce Gaddie, who was shot through the lobe of her left ear] for the reason that there was no evidence that appellant possessed, displayed, or fired a pistol at the time [she] was shot, nor was there any evidence that anyone acting in concert with appellant intentionally fired a pistol, with malice aforethought, at [her], with the intent to produce death or great bodily harm.

■ Appellant first says that there was no evidence that he had a gun or shot Joyce himself. There was, however, evidence that one of the robbers, an accomplice of appellant, did shoot her in the ear. *State v. Chernick*, 278 S.W.2d 741, 746[2] (Mo.1955), controls in its holding, "If two or more persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other (or others) commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose, or as a natural or probable consequence thereof. (Citing cases.)" See also *State v. Paxton*, 453 S.W.2d 923, 925[1, 2] (Mo.1970); and *State v. Johnson*, 524 S.W.2d 97, 99 (Mo.banc 1975).

■ Appellant next says there was no evidence that anyone shot Joyce intentionally and with malice aforethought. The element of malice is presumed from evidence of an assault with a deadly weapon (here a pistol) absent evidence to the contrary. *State v. Jackson*, 477 S.W.2d 47, 53[8] (Mo.1972); and see also *State v. Jones*, 518 S.W.2d 322, 325[3, 4] (Mo.App.1975), where the same presumption is stated, and where it was said, "Malice was properly defined by the trial court—'as intentionally and without just cause or excuse and after thinking about it beforehand and for any length of time, however short.'" The intention flows from the evidence of malice employed.

■ Without setting it forth in his Point VI, appellant says the indictment charged only an offense under § 559.190, RSMo 1969 (assault without malice aforethought) which carries a lesser penalty than § 559.180. The indictment charged appellant with an assault by shooting "likely to produce death or great bodily harm, with malice aforethought with the felonious in-

tent the said Joyce J. Gaddie to do great bodily harm; * * *." Appellant argues that this allegation does not charge him with intent to do any of the things enumerated in § 559.180, but only with intent to do great bodily harm to Joyce, hence the offense falls under § 559.190. Intent to do great bodily harm has been held equivalent to an intent to maim, which is provided for in § 559.180. *State v. Hale*, 472 S.W.2d 365[1] (Mo.1971), and cases cited. See also *State v. Collins*, 519 S.W.2d 362, 364[4, 5] (Mo.App.1975).

Relying upon *State v. Baker*, 276 S.W.2d 131, 134[4, 5] (Mo.1955), appellant argues that he cannot be charged with an assault to commit a crime (great bodily harm) because great bodily harm was actually committed. The *Baker* case construed § 556.-160, RSMo 1949 (now RSMo 1969), as that statute applied to a charge of assault with intent to commit rape where the evidence showed that the rape was actually accomplished or completed. The case was reversed and remanded, ostensibly to charge the appellant with the rape, the court saying, "The meaning and policy of all these provisions, which may be construed together, is that 'if substantial evidence shows the crime charged was consummated the defendant cannot be convicted of a mere *attempt*. He cannot go to the jury on a charge so light in the face of a prima facie case showing the graver offense was committed', *State v. Gadwood*, 342 Mo. 466, 491, 116 S.W.2d 42, 55–56, but must take the hazard of the severer, greater punishment, as in the case of rape." The *Baker* case may be distinguished, because an assault with intent to commit rape can only be an attempt of the greater offense of rape, while here, there can be no *attempt* to commit an assault with intent to do great bodily harm; the proscribed crime is committed when the assault is made. Besides, the cases construing the felonious assault statute, § 559.180, say that the fact of an injury being inflicted goes to the element of intent. See *State v. Baird*, 271 Mo. 9, 195 S.W. 1010, 1013 (1917), "It is settled law that upon a prosecution for assault with intent to kill, while the assault may exist, be perpetrated, and be proven, whether a wound be inflicted or not, yet as the intent with which the assault was made is a necessary element in the case, of which proof, direct or circumstantial, must be made, it has been held almost uniformly that the fact that a wound was inflicted is permissible to be proved as evidence of intent." See also *State v. Layton*, 332 Mo. 216, 58 S.W.2d 454, 458[7] (1933); *State v. Foster*, 513 S.W.2d 657, 662[9] (Mo.App.1974), where defendant was charged with offering violence to a guard, and the evidence showed he struck the guard, which the court held "was material, relevant, and admissible to prove the crime charged"; and 6A C.J.S. Assault and Battery § 80, p. 463, "The real injury inflicted is not material except in so far as it may tend to show that the means were calculated to inflict serious bodily injury." For the foregoing reasons, Point VI in its entirety is overruled.

 Prior to the voir dire examination, appellant made a motion to prohibit the prosecutor from referring to the Black Muslims or to a mortgage dispute between the Black Muslims and the Kansas City Baptist Temple, which motion was overruled. During the voir dire, the prosecutor informed the panel that there had been quite a bit of news publicity about the crime and its alleged connection with the Black Muslim Church or the Nation of Islam. The panel was asked if any of its members had any recollection of the robbery, and when several responded affirmatively, they were asked if that knowledge would influence their verdict. Certainly, no prejudice to appellant appears—the prosecutor was merely ascertaining whether any members of the panel were biased or prejudiced by the publicity. Furthermore, appellant himself went into the question of whether members of the panel were prejudiced by reason of his being a Black Muslim. What questions may or may not be asked is left to the sound discretion of the trial court, which will not be interfered with unless it is clearly abused. 50 C.J.S. Juries § 275, p. 1039; *State v. Long*, 536 S.W.2d 498, 499[1] (Mo.App.1976); *State v.*

*Mudgett*, 531 S.W.2d 275, 279 (Mo.banc 1975). Point VII is overruled.

The judgment is affirmed.

All concur.