**STATE of Missouri, Respondent,**

v.

**Calvin WHITMORE, Appellant.**

**Nos. WD 48754, WD 51534.**

Missouri Court of Appeals,
Western District.

April 15, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 1997.

Application to Transfer Denied
Aug. 19, 1997.

**644**

Rosemary E. Percival, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before ULRICH, C.J.,P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Calvin Whitmore appeals from his convictions of three counts of robbery in the first degree, § 569.020, and three counts of armed criminal action, § 571.015.[1] Mr. Whitmore contends that the trial court erred by allowing a detective to testify that Mr. Whitmore ended a police interrogation by invoking his right to remain silent and his right to counsel after he was asked to provide a hair sample. He also claims that his convictions and punishments for first-degree robbery and armed criminal action violated his right to be free from double jeopardy because the facts, in the light most favorable to the judgments, do not comprise three separate robberies. In addition, Mr. Whitmore appeals the denial of his Rule 29.15 motion, claiming that his trial counsel was ineffective for calling as a witness a fingerprint expert whose testimony was detrimental to his defense.

The convictions are affirmed in part and reversed in part. The judgment denying Mr. Whitmore's post-conviction motion is affirmed.

At approximately 11:30 a.m. on January 28, 1993, Patricia Closer was working inside an office at Teefey's Flower Shop in Kansas City, Missouri. Upon hearing the buzzer on the store's front door, Ms. Closer walked into the sales area of the store, where she encountered an armed man whose face was masked by a stocking. The man told her to give him "all the money." When Ms. Closer replied that the money was kept in the back of the store, the man grabbed her and forced her to accompany him to the back office, where cash was kept in a drawer sitting on a table.

When the robber and Ms. Closer entered the back office, they interrupted the work of another employee, Dorothy Feeback. Pointing his gun at the two women, the man took the cash from the drawer, and then ordered them to give him their jewelry. Ms. Closer gave the man her wedding rings, an additional ring, a watch, and a bracelet. Ms. Feeback gave him her wedding band and her watch.

The man told the women to go down the stairs to the basement of the store. They complied. In the basement, the two women told the store's other employees working there that they had just been robbed. All the employees then left the store through a back door, and ran across to a shop next door to call the police. While Ms. Feeback was in the neighboring business, she saw a man pass by the front window. She recognized the man as the robber because he was tall, very thin and dressed in dark clothing with a dark knit cap on his head. This man was also noticed by Robert Watson, one of the floral designers who had been working in the basement.

Detective Melvin Beverlin responded to the crime scene, and found a nylon stocking on the floor of the premises. He also dusted for fingerprints and found a fingerprint on the money drawer in the back office. This print was run through the computer and Mr. Whitmore was identified as a possible match. A further analysis of the print led the police department examiner to conclude that it was Mr. Whitmore's right thumbprint, as there were seventeen matching characteristics between the two prints. The examiner explained at trial that ten matching characteristics were usually sufficient to conclude that two prints are from the same person.

After Mr. Whitmore's print was identified, the police assembled a pictorial lineup which included Mr. Whitmore's photograph, and showed it to Ms. Closer and Ms. Feeback. Neither woman was able to identify the robber from among the six photographs shown to them, because the robber had a stocking covering his face which distorted his features. Nor could Ms. Feeback identify anyone as the man she saw in front of the

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise indicated.

neighboring business a short time after the robbery. The photo lineup was also shown to Mr. Watson. Although Mr. Watson could not positively identify the person, he picked Mr. Whitmore out of the pictorial lineup as "looking most like" the man he saw walking by the neighboring business within a short time after the robbery.

On March 8, 1993, Mr. Whitmore was questioned by Detective John Jacobson. Mr. Whitmore was advised of his *Miranda*[2] rights, which he waived, agreeing to answer questions without an attorney being present. About fifteen minutes into the interview, Mr. Whitmore invoked his right to counsel, and the interview concluded. At trial, despite Mr. Whitmore's continuing objection that the testimony would violate his constitutional rights, Detective Jacobson was permitted to describe the events leading to the end of the interrogation:

Q. Did the defendant ever refuse to answer further questions or did he desire to stop answering questions?

A. After 14 minutes into the interview with Mr. Whitmore he invoked his right to counsel.

Q. What happened at that time?

A. All questioning ceased, and he was returned to the Detention Unit.

Q. Is the time that we're referring to the only time that you questioned the defendant?

A. Prior to him invoking the right was the only time.

Q. And as far as you know, is this the only time the defendant was questioned regarding this matter?

A. Yes.

Q. Did the defendant, in fact, talk to you prior to invoking his right to remain silent?

A. Yes.

Q. Did the defendant, in fact, talk to you prior to invoking the right to remain silent?

A. Yes.

Q. What was the content of that conversation?

A. When I questioned Mr. Whitmore regarding this case, he denied any knowledge or involvement in the offense. He stated he was not familiar with the business and had never been inside that business before.

Q. Did you advise Mr. Whitmore any facts specific to this case?

A. I questioned him further, and he continued to affirm that he had not been inside Teefey's Flowers. I presented him with the information regarding the fingerprint recovered from the cash drawer from inside the business.

Q. What was his response?

A. He continued to deny it was him and it was not his print.

Q. Did you continue the conversation with the defendant at this time?

A. I asked Mr. Whitmore then if he was cooperative or if he was willing to be cooperative in the investigation.

Q. What did he tell you?

A. He said he would be willing to be cooperate.

Q. Then what did your conversation consist of?

A. I then advised or asked him if he would be willing to submit, to sign a Consent to Search Form to obtain head hairs regarding evidence in this case to be compared to that.

Q. And what was his response to that?

A. That was the point in which he invoked his right to counsel stating that he wanted a lawyer.

At the end of the trial, Mr. Whitmore was found guilty of three counts of first-degree robbery and three counts of armed criminal action. He was sentenced as a class X offender to three consecutive thirty-year terms of imprisonment on the robbery counts, and to three consecutive ten-year terms of imprisonment on the armed criminal action counts. He subsequently filed a notice of appeal. Mr. Whitmore also filed a Rule 29.15 motion, which was denied by the motion court following an evidentiary hearing. This proceeding consolidates his appeal from

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the denial of his post-conviction motion with his direct appeal.

In his first point on direct appeal, Mr. Whitmore claims that the trial court erred by allowing Detective Jacobson to testify that Mr. Whitmore ended the interrogation by invoking his right to counsel after being asked to provide a hair sample. Mr. Whitmore contends that this testimony was an impermissible comment on his post-arrest silence.

■ It is well established that the State may not use a defendant's post-arrest silence, or language representing silence, to incriminate the defendant. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976), *State v. Frazier*, 927 S.W.2d 378, 379 (Mo.App.1996). In this context, "silence" includes not only a defendant's refusal to speak to police, but also a defendant's request for an attorney. *Wainwright v. Greenfield*, 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 640 n. 13, 88 L.Ed.2d 623, 632 n. 13 (1986). *See also State v. Tims*, 865 S.W.2d 881, 885 (Mo.App.1993).

■ Once a defendant has waived his right to remain silent, as Mr. Whitmore did at the outset of the interrogation, subsequent responses made during the course of custodial interrogation may be admitted into evidence and remarked upon, as well as the circumstances surrounding the termination of the interrogation. *Frazier*, 927 S.W.2d at 379–80. But any evidence concerning the termination of an interrogation which reveals that the defendant failed to answer a direct charge of guilt, or that the defendant "clammed up" under circumstances calling imperatively for an admission or denial, is improper and should not be admitted. *Id.* at 380. If no inference of guilt can be reasonably drawn from evidence describing the termination of an interrogation, such evidence is admissible. *Id.*

In *Tims*, the Eastern District held that it is improper *per se* to allow testimony that a defendant's request for an attorney terminated an interrogation, as an inference of guilt might reasonably be drawn from such a request for an attorney. 865 S.W.2d at 886. This holding was narrowed by the court in

*Frazier*, which ruled that a defendant's request for an attorney creates an inference of guilt only under certain circumstances, as when the request is "in direct response to a charge of guilt or under circumstances calling imperatively for an admission or denial." 927 S.W.2d at 380. Under these circumstances, this court concluded, it is improper to allow testimony that an interrogation ceased when the defendant requested an attorney. *Id.*

In addition, the *Frazier* court held that references to a defendant's request for an attorney could create an inference of guilt if there was a gratuitous or repetitious emphasis placed on the request. *Id.* at 380–81. If presented in a manner that creates an adverse inference, such references may constitute grounds for reversal.

As an example of the kind of repetitious emphasis upon a request for an attorney which could create an inference of guilt, the *Frazier* court cited *State v. Martin*, 797 S.W.2d 758 (Mo.App.1990). *Frazier*, 927 S.W.2d at 380. In *Martin*, the police officer who interrogated the defendant testified, about the defendant's refusal to put his confession on videotape:

A. I asked him if he would be willing to give us a statement on videotape.

Q. When you asked him that, what happened?

A. He said that he thought he should talk to an attorney first.

Q. Is that the first mention that he had made of wanting to talk to an attorney?

A. Yes, sir, it is.

Q. And when he asked to talk to an attorney, did you in fact make arrangements for him to do so?

A. I did.

Q. After that was completed, did you renew your request?

A. No, sir. After he had talked to an attorney, he indicated he did not wish to make any further statement.

797 S.W.2d at 764. As noted by the *Frazier* court, the police officer's testimony in *Martin* created an impermissible inference of guilt

because the prosecutor repeatedly asked the officer about the defendant's request for an attorney. *Frazier,* 927 S.W.2d at 380–81.

 The circumstances of Mr. Whitmore's case are comparable to *Martin,* in that the testimony of Detective Jacobson raised the issue of Mr. Whitmore's request for counsel or invocation of his right to remain silent five times, while there were four references in *Martin.* In this case, as in *Martin,* the repeated references were sufficient to create an inference of guilt. In addition, the prosecutor emphasized this inference by referring to Mr. Whitmore's invocation of his constitutional rights in closing argument. The prosecutor stated:

> [Detective Jacobson] told you that the defendant denied repeatedly ever having been at Teefey's. He told you he even told him his fingerprint had been found there and he continued to deny ever having been there. He said he wanted to cooperate. When Detective Jackson [sic] asked him in fact would he consent to having hair samples removed to be compared with those found in the nylon stocking found in Teefey's, he invoked the right to be silent.

The record of this case compels the finding that the prosecutor's direct examination of Detective Jacobson violated Mr. Whitmore's constitutional rights.

 Having determined that the repeated references to Mr. Whitmore's request for an attorney were improper, it remains to be determined whether a reversal of his convictions is warranted. Where improper references to a defendant's request for an attorney were erroneously admitted, this court will nevertheless sustain the defendant's conviction if the error is harmless beyond a reasonable doubt. *Tims,* 865 S.W.2d at 886; *Martin,* 797 S.W.2d at 765. Error is harmless where, aside from the erroneous testimony, there is overwhelming evidence supporting the conviction. *Id.*

 Here, there was overwhelming evidence supporting Mr. Whitmore's convictions. The evidence of Mr. Whitmore's guilt was that Mr. Whitmore's thumbprint matched a print lifted from the cash drawer, which was kept in an area inaccessible to the public. The print examiner explained at trial that there were a total of seventeen matching characteristics between the two prints, and that ten matching characteristics were usually sufficient to conclude that two prints are from the same person. Mr. Whitmore maintained he had never been inside the store where his thumbprint was found. When the thumbprint was determined to be Mr. Whitmore's, the police obtained a photograph of Mr. Whitmore and placed it in a photo lineup with five other pictures, which was shown to the employees of Teefey's. Mr. Watson identified Mr. Whitmore as "looking most like" the man he saw right after the robbery, who Ms. Feeback recognized as the robber. While a single fingerprint may generally not constitute overwhelming evidence, under these facts, there was overwhelming evidence against Mr. Whitmore.

Mr. Whitmore's defense was that the police department had manufactured this evidence to support their suspicion that he had committed the robberies. He claims the police lifted his thumbprint from another location and were falsely stating that it had been found on the cash box at Teefey's Flower Shop. The trial court excluded virtually all of Mr. Whitmore's evidence to support this defense, however, and Mr. Whitmore does not challenge these rulings in his appeal. Point denied.

In his second point on direct appeal, Mr. Whitmore claims that the trial court violated his right to be free from double jeopardy by convicting him of three counts of first-degree robbery and three counts of armed criminal action. Mr. Whitmore acknowledges that he did not raise this issue in the trial court, and he seeks plain error review.

 Although Mr. Whitmore failed to properly preserve this issue for trial, our review is not limited in scope.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This protection is made applicable to the State through the Fourteenth Amendment.

Beyond simply protecting defendants from successive prosecutions for the same

offense after an acquittal or a conviction, the Fifth Amendment also prohibits multiple punishment for the same offense. The prohibition against multiple punishment is "designed to ensure that the sentencing discretion of the court is confined to the limits established by the legislature."

*Hagan v. State,* 836 S.W.2d 459, 461–62 (Mo. banc 1992) (Citations omitted). A claim of double jeopardy is an assertion of a constitutional grant of immunity which is significantly different than other constitutional guarantees pertaining to procedural rights. *State v. Cody,* 525 S.W.2d 333, 335 (Mo. banc 1975). A trial court is without the power or jurisdiction to try or punish a defendant twice for the same offense. *Id.* at 335–36. If the trial court was without the power or jurisdiction to proceed against a defendant twice for the same offense, then relief can be granted on appeal even though the issue was not preserved at trial. *Spencer v. State,* 805 S.W.2d 677, 680 (Mo.App.1990).

█ In evaluating whether Mr. Whitmore has raised a valid claim of double jeopardy, we first examine the statute under which he was convicted of three counts of robbery. Section 569.020(1) provides, in pertinent part, that a person commits the crime of robbery in the first degree "when he forcibly steals property and in the course thereof he ... [i]s armed with a deadly weapon." Pursuant to § 569.010, a person "forcibly steals," and thereby commits the crime of robbery, when, in the course of stealing,

> he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

In the case at bar, Count I of the indictment charged that Mr. Whitmore forcibly stole currency owned by Teefey Flowers while armed with a deadly weapon. Count III of the indictment charged that, while armed with a deadly weapon, Mr. Whitmore forcibly stole various items of jewelry owned by Ms. Feeback. Count V charged that, while armed with a deadly weapon, he forcibly stole various items of jewelry owned by Ms. Closer.

Mr. Whitmore argues that, as set out in the verdict directing instructions in this case, the same elements were needed to establish his criminal liability for Count I as were needed to establish his criminal liability for Counts III and V. In Count I, the corresponding verdict-directing instruction required a finding that, in order to forcibly steal property, Mr. Whitmore used or threatened physical force against Ms. Closer and Ms. Feeback. In Counts III and V, the corresponding verdict-directing instructions again required a finding that Mr. Whitmore used or threatened physical force against Ms. Feeback and Ms. Closer, respectively, in order to forcibly steal property. According to Mr. Whitmore, the only difference between the Counts was that, in Count I, the property belonged to Teefey's Flower Shop, while in Counts III and V, the property belonged to the individual employees.

In essence, Mr. Whitmore claims that when only two individuals are threatened with or subjected to force and robbed of property in their possession or control, the fact that some of the property taken was actually owned by a third entity, i.e., their employer, does not transform the criminal conduct into three separate robberies. Therefore, Mr. Whitmore argues, the trial court subjected him to double jeopardy by convicting and sentencing him on three separate counts of first-degree robbery. Similarly, Mr. Whitmore claims that the trial court subjected him to double jeopardy by convicting and sentencing him on three separate counts of armed criminal action, which were premised upon the three armed robbery counts.[3]

---

**3.** Count II charged Mr. Whitmore with armed criminal action based upon the forcible stealing of the currency owned by Teefey's Flower Shop. Count IV charged Mr. Whitmore with armed criminal action based upon the forcible stealing of Ms. Feeback's jewelry. Count VI charged Mr. Whitmore with armed criminal action based upon the forcible stealing of Ms. Closer's jewelry.

In support of his contention, Mr. Whitmore cites *White v. State,* 694 S.W.2d 825 (Mo.App. 1985). In *White,* the defendant and an accomplice entered a car rental business, threatened the employee with a gun, and told the employee to lie on the floor. The robbers then removed business funds from a desk, and took $20.00 from the employee's wallet. *Id.* at 827. The defendant was charged with and pled guilty to one count of robbing the business and one count of robbing the employee. *Id.*

On appeal of the denial of his motion for post-conviction relief, the Eastern District reversed one of the two robbery convictions, agreeing with the defendant's claim that subjecting him to two separate robbery charges constituted double jeopardy. *Id.* at 827–28. The *White* court held that the fact that the items taken belonged to both the employee and the business he worked for did not make the robbery two offenses, as robbery is an offense against the right to possession, and the specific ownership of the property taken is not material so long as it was not the property of the accused. *Id.* at 827. The *White* court further held that as there was only one victim who was threatened with the use of physical force, there was only one robbery. *Id.* at 828.

The Eastern District's holding in *White,* to the effect that only one robbery occurs if a defendant robs a business employee and takes the employee's property as well as the business' money, appears to be the general rule. *Mansfield v. Champion,* 992 F.2d 1098, 1099–1102 (10th Cir.1993); *Morgan v. State,* 407 So.2d 962, 963 (Fla.App.1981); *Creecy v. State,* 235 Ga. 542, 221 S.E.2d 17, 19 (1975); *Stark v. Com.,* 828 S.W.2d 603, 606–07 (Ky.1991); *State v. Sellars,* 52 N.C.App. 380, 278 S.E.2d 907, 913–14 (1981); *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883, 884–886 (1972).

In Mr. Whitmore's case, there were two separate victims who were threatened with physical force and made to surrender property at gunpoint, and thus Mr. Whitmore was properly convicted of two counts of first-degree robbery and two counts of armed criminal action. His conviction of an additional count of first-degree robbery and an additional count of armed criminal action, pertaining to the taking of the property owned by Teefey Flower Shop from the same two victims, was in violation of his right to be free from double jeopardy.[4] Mr. Whitmore's conviction for robbery in the first degree under Count I and armed criminal action under Count II are reversed.[5]

■ In his sole point on appeal from the denial of his Rule 29.15 motion, Mr. Whitmore claims that his trial counsel was ineffective in calling a fingerprint expert, August Nilges, as a defense witness. Mr. Whitmore claims that the decision to call Mr. Nilges was unreasonable trial strategy because Mr. Nilges acknowledged that the thumbprint lifted from the scene matched that of Mr. Whitmore. Mr. Whitmore argues this testimony corroborated the State's most damaging evidence against him, without providing any testimony beneficial to the defense.

Mr. Nilges' trial testimony was brief. Defense counsel attempted to question Mr. Nilges about whether the police followed proper procedures in obtaining evidence from the crime scene, but the trial court did not allow such testimony consistent with its pre-trial ruling that police procedure was not relevant to this case. As a result, Mr. Nilges' only testimony was (1) that he found two identifiable prints that were purportedly from the cash drawer—a fingerprint and a palm print; (2) that the fingerprint matched that of Mr. Whitmore; and (3) that there was no way to establish that the fingerprint came from the cash drawer.

"Trial counsel is ineffective if (1) he or she fails to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and (2) the failure to exercise such diligence

---

**4.** Reversal of the underlying felony conviction requires reversal of the conviction for armed criminal action. *State v. Weems,* 840 S.W.2d 222, 228 (Mo. banc 1992).

**5.** There is no contention here that the taking of the store's money and the clerk's money occurred on separate occasions, in separate incidents, which were separated by significant time and distance. *See Mansfield,* 992 F.2d at 1101.

is prejudicial." *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc), *cert. denied* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The necessary prejudice exists only where trial counsel's acts are outcome determinative, meaning there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.* Moreover, reasonable trial strategy is not a basis for ineffective assistance of counsel. *Id.*

In light of the incriminating nature of the State's evidence of the matching thumbprint, defense counsel's strategy was to suggest that the police had manufactured evidence by either planting the thumbprint on the cash drawer or falsely stating that they had lifted it from the cash drawer. Mr. Nilges' limited testimony concerning a latent palm print and his statement that there was no way to establish that the thumbprint came from the cash drawer were only marginally helpful in advancing this defense, considering the exclusion of all evidence that the police officer's actions in obtaining the thumbprint did not comply with proper procedures.

But Mr. Nilges' other testimony did not cause the requisite prejudice to Mr. Whitmore's defense to merit post-conviction relief. Mr. Nilges' remark corroborating the State's conclusion that the latent thumbprint matched that of Mr. Whitmore was not "outcome determinative," since the State had already offered undisputed testimony establishing that fact.

This court will reverse the motion court only if the motion court's findings and conclusions are clearly erroneous. *Id.* The motion court's findings and conclusions are clearly erroneous only if, after a review of the entire record, this court is left with the definite and firm impression that a mistake has been made. *Id.* at 814–15. We cannot conclude that the motion court was clearly erroneous in denying Mr. Whitmore's claim for post-conviction relief. Point denied.

Mr. Whitmore's first-degree robbery convictions on Counts III and V and his armed criminal action convictions on Counts IV and VI are affirmed. His first-degree robbery conviction on Count I and his armed criminal action conviction on Count II are reversed.

The judgment of the motion court is affirmed.

All concur.