**STATE of Missouri, Respondent,**

v.

**Chancell GRIDIRON, Appellant.**

**No. ED 84435.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 8, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 22, 2005.

Craig Allan Johnston, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Attorney General, Jefferson City, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Chancell Gridiron (Defendant) appeals from the judgment upon his conviction by a jury of two counts of robbery in the first degree, Section 569.020, RSMo 2000,[1] (Counts I & III), and two counts of armed criminal action, Section 571.015, (Counts II & IV). Defendant was sentenced to consecutive terms of eighteen years' imprisonment on Count I, six years' imprisonment on Count II, and three years' imprisonment on Count IV. Defendant was sentenced to a concurrent term of ten years' imprisonment on Count III. On appeal, Defendant argues the trial court erred in submitting a second count of robbery in the first degree in Count III and the related second count of armed criminal action in Count IV where there was insufficient evidence to support the conviction and violated his right to be free from double jeopardy. We reverse Defendant's convictions and vacate sentences for first-degree robbery in Count III and the related count of armed criminal action in Count IV, and affirm the remaining convictions and sentences.

Viewed in the light most favorable to the verdict, the following evidence was ad-

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

duced at trial. On September 6, 2002, Kim Stapleton (Stapleton), an Assistant Manager at UMB Bank in Brentwood, Missouri, was stationed at one of the four teller windows. Stapleton was supervising the teller line that day and also had money in the teller drawer of her station for which she was responsible. Stapleton was working on the computer at her teller station and speaking to her husband on the phone when she observed two men approaching the bank quickly while pulling masks over their faces. Believing that the bank was going to be robbed, Stapleton hung up the phone, left the teller window and went to the back of the bank. On her way to the back of the bank, Stapleton attempted to advise two co-workers and a customer that the bank was being robbed. As Stapleton exited the building, she heard: "Good afternoon, ladies and gentleman. This is a robbery." Stapleton then ran across the parking lot to a Target store where she borrowed a cell phone to call the police.

The robbers, later identified as Defendant and James Buettner (Buettner), entered the bank, wearing masks and carrying firearms. They announced the robbery, ordered everyone to put their hands in the air and their cell phones on the ground. Defendant then took everyone except Jeff Tandler (Tandler) to the bathrooms. At that point, Tandler was the only teller left at the teller windows. Buettner put his gun in Tandler's face and ordered him to empty his drawer. Tandler emptied his top drawer onto the counter and Buettner placed the money in a bag. Buettner also directed Tandler to empty the drawer in Stapleton's station. Tandler did so and Buettner placed the money in his bag. Tandler was able to pull the "bait money" from Stapleton's drawer when he emptied it. The pulling of the "bait money" triggered the silent alarm. Defendant ran across the lobby and told Buettner they

needed to go. They left the bank in a black convertible Mustang. Buettner drove and Defendant rode in the passenger seat.

When Defendant and Buettner exited the bank, Brian Boedicker, an off-duty St. Louis County police officer, was traveling by the bank as a passenger in a truck. Upon seeing the two masked men exiting the bank with handguns, Officer Boedicker contacted the 911 operator. Officer Boedicker told the driver of the truck to follow the Mustang. Police vehicles soon joined the pursuit. The Mustang traveled at high speeds throughout the chase. Eventually Buettner lost control of the car, causing it to slide through a ditch and come to rest in the front yard of a residence. Buettner then shot and killed himself before the police reached the car. Defendant was apprehended.

The police recovered from the Mustang two handguns, a broken pellet gun, latex plastic gloves, a black cloth mask, a hockey mask, loose money, and a bag containing money. The money recovered from the Mustang totaled $4,419 which accounted for the $3,908 missing from Tandler's drawer and the $511 missing from Stapleton's drawer. There was no ammunition in the guns or in the vehicle except for an empty shell casing.

Defendant was arrested, waived his *Miranda* rights, and gave a statement to the police. He admitted his part in the robbery. Defendant was charged, acting in concert with Buettner, with two counts of robbery in the first degree and two counts of armed criminal action.

Defendant did not testify at trial and did not present a defense. The jury found Defendant guilty of two counts of robbery in the first degree and two counts of armed criminal action. After the penalty phase, the jury recommended punishment

and sentencing of eighteen years' imprisonment on the first count of robbery, Count I; six years' imprisonment on the associated armed criminal action count, Count II; ten years' imprisonment on the second count of robbery, Count III; and three years' imprisonment on the associated armed criminal action count, Count IV. The trial court then sentenced Defendant to serve the sentences for Counts I, II and IV consecutively and the sentence for Count III concurrently for a total of twenty-seven years' imprisonment. Defendant now appeals.

█ In his first point, Defendant argues the trial court erred in submitting the second count of first-degree robbery against Stapleton in Count III, and its related armed criminal action count in Count IV, to the jury over his objections because there was insufficient evidence to support the second robbery conviction where force was only applied to one victim and this subjected him to double jeopardy in that the evidence proved only one count of first-degree robbery was committed.[2] We agree.

█ A defendant's right to be free from multiple punishments for the same offense is embodied in the double jeopardy prohibition. *State v. French*, 79 S.W.3d 896, 898 (Mo. banc 2002). Multiple punishments are permissible if the defendant in law, and in fact, committed separate crimes. *French* at 898–99. Double jeopardy analysis regarding multiple punishments is limited to determining whether multiple punishments were intended by the legislature. *Id.* at 898. To determine whether multiple punishments were intended by the legislature, the court looks to the "unit of prosecution" allowed by the statutes under which the defendant was charged. *Id.* at 899.

█ Under the facts of this case, we find the count of first-degree robbery and armed criminal action charge involving Stapleton violated Defendant's right to be free from double jeopardy where it was based on one act of force directed to Tandler. The State submitted both counts of robbery on the theory that the threat of immediate force was used only against Tandler for the purpose of forcing Tandler to deliver up property in his possession and to deliver up the property in Stapleton's possession. In submitting the robbery count against Stapleton, the State submitted a verdict directing instruction asserting that Tandler, not Stapleton, was threatened and the purpose of that threat was to force Tandler, not Stapleton, "to deliver up the property."[3] Because there

---

2. Defendant concedes he failed to phrase his motions or objections specifically in terms of double jeopardy and thus failed to properly preserve his claim of double jeopardy. *See State v. Rogers*, 95 S.W.3d 181, 185 (Mo.App. W.D.2003)(To properly preserve the constitutional issue for appeal a party must (1) raise the constitutional issue at the first available opportunity, (2) specifically designate the constitutional provision claimed to have been violated by express reference to the article and section of the constitution or by quoting the provision itself, (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.) Although Defendant failed to properly preserve this issue for trial, our review is not limited in scope because a claim of double

jeopardy is an assertion of a constitutional grant of immunity which is significantly different than other constitutional guarantees pertaining to procedural rights. *State v. Whitmore*, 948 S.W.2d 643, 648–49 (Mo.App. W.D. 1997). A trial court is without the power of jurisdiction to try or punish a defendant twice for the same offense. *Id.* at 649. If the trial court was without power or jurisdiction to proceed against a defendant twice for the same offense, then relief can be granted on appeal even though the issue was not properly preserved. *Id.*

3. The verdict director provided, in relevant part:
    First, that on or about September 6, 2002, in the County of St. Louis, State of Mis-

was no evidence of any use or threat of use of force upon Stapleton, there was insufficient evidence to convict Defendant of the second robbery count and violated his right to be free from double jeopardy.

Section 569.020 defines robbery in the first degree as:

A person commits the crime of robbery in the first degree when he *forcibly steals* property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

(Emphasis added). The term "forcibly steals" is defined in Section 569.010.1 as follows:

[A] person "forcibly steals," and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

The distinctive characteristic of robbery is "violence to the victim." *State v. Hayes*, 518 S.W.2d 40, 45 (Mo.1975).

Here, there was no forcible stealing from Stapleton where there was no use or threat of use of physical force to her. Stapleton had no contact with the Defendant. Stapleton left the building before the robbery took place and Defendant was not aware that she was present in the bank prior to his entry. No weapon was displayed to Stapleton, nor was there use or the threat of the use of force against her. Moreover, Stapleton was not forced to relinquish any property in her control at the time of the taking.

The State relies on *Eason v. State*, 52 S.W.3d 24 (Mo.App. E.D.2001) to support its argument that it is proper to charge two counts of robbery where force is directed to one person, who under the threat of that force surrenders his or her property and the property of another.[4] In *Eason*, the defendant, an employee of a company that provided home cleaning and meal services to the victims, a daughter and her disabled mother. *Id.* at 26. Defendant went to the victims' apartment to "talk about making up time that he had missed." *Id.* After daughter allowed the defendant into the apartment, he informed her that he was going to rob her and then pulled a ring off of her finger. *Id.* at 26. The defendant then instructed the daughter to remove a ring from her mother's

souri, James Buettner took U.S. Currency, which was property in the charge of Kim Stapleton, and
Second, that James Buettner did so for the purpose of withholding it from the owner permanently, and
Third, that James Buettner in *doing so threatened the immediate use of physical force on or against Jeffrey Tandler for the*

*purpose of forcing Jeffrey Tandler to deliver up the property,* and
Fourth, that in the course of taking the property, the defendant or James Buettner displayed or threatened the use of what appeared to be a deadly weapon.
(emphasis added).

4. The *Eason* case was an appeal from the denial of a motion for post-conviction relief.

hand. *Id.* The daughter removed the ring from the hand of her mother, who was in lying in bed in a separate room and was unaware a robbery was occurring, and gave the ring to the defendant. *Id.* The defendant was charged with two counts of robbery under the current robbery statute. *Id.* This court rejected the defendant's contention that because only one victim was threatened only one robbery occurred. *Id.* at 27. This court held the defendant could properly be convicted of committing two robberies even though the requisite threat of force was directed toward one person, who, under the threat of that force surrenders her property and the property of another. *Id.* at 28.

We find the *Eason* case distinguishable from the present facts. In *Eason,* the defendant was charged with second-degree robbery, unlike Defendant who was charged with first-degree robbery. Unlike first-degree robbery, second-degree robbery does not require proof of the use of a weapon. This is particularly significant here where no weapon was ever displayed to Stapleton. More importantly, the defendant in *Eason* was clearly aware of the mother's presence, knew exactly where she was, and knew she had control over the property. Although the defendant acted through the daughter to obtain the property, had the daughter not complied with his threats, the defendant could have easily walked into the bedroom and taken the ring directly off of the mother's finger. In contrast, Stapleton was no longer present in the building and left the property in the bank. Defendant was not aware that Stapleton was ever present in the bank prior to the taking of the property. Further-

more, had Tandler refused to comply with Defendant's demand, he could not have forced Stapleton to deliver up the property. Thus, we find the State reliance on *Eason* misplaced.

We find there was no use or threat of use of force to Stapleton as required under the statute. Therefore, there was insufficient evidence to convict Defendant of the second robbery count and Defendant was improperly convicted of two counts of robbery based on the threat of use of force to Tandler in violation of the prohibition against double jeopardy. The trial court erred in submitting the second robbery in the first-degree count and accompanying armed criminal action. Accordingly, we reverse Defendant's convictions for robbery in the first degree of Stapleton in Count III and for the accompanying armed criminal action in Count IV and vacate the sentences for Counts III and IV.[5]

Because we conclude that discussion of Defendant's second point would have no precedential value, we will affirm as to that point by summary order pursuant to Rule 30.25(b), and are furnishing to the parties a memorandum of the reasons for our decision as to that issue.

Defendant's convictions for first-degree robbery in Count III and the related count of armed criminal action in Count IV are reversed and the sentences for Counts III and IV are vacated. Defendant's remaining convictions and sentences are affirmed.

KATHIANNE KNAUP CRANE, J., concurs.

PATRICIA L. COHEN, P.J., concurs in result in separate concurring opinion.

---

5. Defendant received a sentence of twenty-seven years, consisting of eighteen years on Count I (first-degree robbery of Mr. Tandler), six years on Count II, ten years on Count III (first-degree robbery of Ms. Stapleton), and three years on Count IV (armed criminal ac- tion). The trial court ran Counts I, II and IV consecutively and Count III concurrent to Counts I, II and IV. Accordingly, reversal of Counts III and IV reduces Defendant's sentence from twenty-seven years to twenty-four years' imprisonment.

PATRICIA L. COHEN, Presiding Judge, concurring.

I concur in the result but write separately to express my variance with the majority's analysis regarding two aspects of this opinion: (1) the standard of review and (2) the precedential value of *Eason v. State*, 52 S.W.3d 24 (Mo.App. E.D.2001).

The majority concludes that Defendant failed to properly preserve the issue of double jeopardy. Because the record demonstrates otherwise, I disagree.

The State initially indicted Defendant, acting alone, on one court of robbery in the first degree, as follows, in pertinent part: "the defendant forcibly stole U.S. currency in the possession of UMB Bank, and in the course thereof defendant was armed with a deadly weapon." The State also charged Defendant with armed criminal action. Thereafter, the State filed an information in lieu of indictment charging one count of robbery first and one count of armed criminal action alleging that Defendant, acting with James Buettner, forcibly stole U.S. currency in the possession of UMB Bank.

On November 5, 2003, three days before trial, the State filed a superceding indictment which, for the first time, alleged two counts of robbery in the first degree alleging that Defendant, acting with James Buettner "forcibly stole U.S. currency in the charge of Jeffrey Tandler...." (Count I) and "in the charge of Kim Stapleton" (Count III). On the first day of trial, after reviewing the new indictment for the first time, defense counsel objected contending that "two robbery in the first degree counts have been created and they were created to separate a forcible stealing ..." into different counts. More specifically, defense counsel argued that "Miss Stapleton at no time was near any teller drawer or teller window and at no time was made to be the subject of having the U.S. currency forcibly stolen from her. Mr. Tan-

dler was asked to move from one drawer to the other by Mr. Buettner."

The trial court rejected the defense argument regarding the propriety of the indictment and proceeded to trial. At the close of all the evidence, defense counsel requested that the trial court dismiss the two counts related to Ms. Stapleton on the grounds that Ms. Stapleton did not have possession or control of the currency and that the force that was directed at Mr. Tandler did not transfer to Ms. Stapleton. In addition, at the instruction conference, defense counsel objected to the verdict director submitting the Stapleton counts and specifically raised a double jeopardy issue. The trial court responded, as follows:

Court reviewed *Eason v. State*, 52 S.W.3d 24, in which a gentleman forcibly robbed a woman at a retirement home. That woman then walked into another room where her mother was. The individual with the gun was not present. She took the ring off her finger, and that was two separate robberies and did not involve double jeopardy and the merger doctrine. Court also reviewed several cases involving bank robberies in which you could not charge a stealing from the two counts of one robbery for the individual teller and for the bank because they merge. But in this case, you have two individuals, different tellers that were involved. The evidence that the Court heard was that she ran out of the bank when she saw the individual's with the masks as she knew a robbery was going to occur. So there was threat against her and she also heard this was a hold up or this was a robbery when she was leaving the bank. The court will permit the two robberies.

Finally, the defense counsel raised the issue again in the Motion for New Trial,

specifically noting that Counts III and IV differed only from Counts I and II in that the property at issue came from two different bank drawers and that the trial court's failure to dismiss Counts III and IV violated, among other things, the Fifth Amendment to the U.S. Constitution.

There is no question that where the state splits one offense into several parts and prosecutes the defendant separately with respect to each part, the double jeopardy clause is implicated. *See State v. Moton,* 476 S.W.2d 785, 790 (Mo.1972). Here defense counsel specifically objected to the indictment on double jeopardy grounds as soon as counsel became aware of the existence of the superseding indictment. Defense counsel's objection was unmistakably framed as a double jeopardy challenge: "two robbery in the first degree counts have been created and they were created to separate a forcible stealing. . . ."

The trial court clearly understood that defense counsel was challenging the matter on double jeopardy grounds, discussed the double jeopardy issues, and overruled counsel's objection to submitting the two counts at issue on the grounds of *Eason v. State,* 52 S.W.3d 24 (Mo.App. E.D.2001), a double jeopardy case. The purpose of the requirement of raising a constitutional challenge at the earliest possible time is to provide the trial judge with the opportunity to "correct errors and avoid prejudice in the first instance." *State v. Kenley,* 952 S.W.2d 250, 260 (Mo. banc 1997). Here, the trial judge expressly considered the double jeopardy challenge at the earliest possible time and at all appropriate junctures thereafter. Accordingly, the issue before us was properly preserved.

I also write to emphasize that, particularly in light of this opinion, our decision in *Eason* should not be followed. Missouri courts have long held that the "distinctive characteristic" of the crime of robbery is "violence to the victim." *State v. Hayes,* 518 S.W.2d 40, 45 (Mo.1975). Thus, the appropriate "unit of prosecution" for double jeopardy purposes is the person who is subject to the force. The majority opinion is consistent with these settled notions and accordingly stands for the proposition that the state cannot properly charge a defendant with two robberies when he uses or threatens to use force against only one person in an effort to cause such person to deliver-up property. To the extent that *Eason* can be construed to hold otherwise, it is wrongly decided.[1]

---

1. In particular, I disagree with the *Eason* court's suggestion that *White v. State,* 694 S.W.2d 825 (Mo.App. E.D.1985) is no longer valid because of the repeal of Section 560.120 RSMo 1969 and the subsequent enactment of Section 569.030. *See State v. Whitmore,* 948 S.W.2d 643 (Mo.App. W.D.1997). The *Eason* court asserts that in the transition from Section 560.120 to Section 569.030 the word "that" was eliminated, somehow altering the requirement that the subject of a robbery charge experience force. However, the word "that" does not appear in Section 560.120. Thus, it is not clear how the absence of a word that was never in the repealed statute could support such a drastic departure from settled law under the replacement statute.