

# In the Missouri Court of Appeals
## Eastern District

DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED102318 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Julian Bush |
| LAWRENCE BRANDON, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 2, 2016 |

Lawrence Brandon ("Defendant") appeals from his convictions following a bench trial of: two counts of forcible rape, in violation of Section 566.030, RSMo (2000);[1] two counts of forcible sodomy, in violation of Section 566.060; two counts of first-degree robbery, in violation of Section 569.020; and six counts of armed criminal action, in violation of Section 571.015.[2] We reverse one count of first-degree robbery and the corresponding armed criminal action count, with instructions to vacate those sentences. We remand the cause to the trial court to correct the written sentences on four of the counts.

## I. BACKGROUND

Defendant was charged with a total of sixteen counts for events that occurred on the night of April 16, 2012, and into the early morning of April 17, 2012. Victim was leaving a bar where

---

[1] All further statutory references are to RSMo (2000).
[2] Defendant was acquitted of one count of kidnapping (Section 565.110), the accompanying count of armed criminal action (Section 571.015), and two counts of stealing a motor vehicle (Section 570.030).

she occasionally worked when Defendant and two other co-defendants jumped out from behind a dumpster brandishing a gun and told her to get in her car with them. While driving, the men took turns forcing Victim to perform oral sex and also forcibly sodomizing Victim. One of the men kept a gun pointed at Victim's head almost the entire time they were driving around.

When the men demanded money, Victim told them she did not have any. The men threatened to kill her if she did not give them money. Victim told the men she would call the owner ("Owner") of the bar she had been leaving that night and tell him she needed money to post bond for her brother. After Victim called Owner and he agreed to give her money, the men drove back to the bar.

Victim was moved to the front seat, and the men put a vest over her lap so Owner could not see that she was naked from the waist down. Owner came outside to where the men had parked and handed Victim between $200 and $300 through the window. He said Victim looked shaken up, but the window was not rolled all the way down and the windows were tinted, so it was difficult to see inside.

The men continued to drive the car around, raping and sodomizing Victim while she was held at gunpoint. Sometime during the night, the men stole Victim's jewelry, but she could not remember at what point this happened. The men made a few stops throughout the night for beer and rolling papers.

After they found Victim's insurance card, the men decided to drive to her house. They also found the key to Victim's daughter's car and took the car and moved it a few miles away. They all then got back in Victim's car and went to a gas station.

At the gas station, Defendant and another co-defendant went inside while the third man stayed in the front seat with the gun. Victim noticed that the man in the car was distracted by

2

rolling marijuana into a joint and that the car doors were unlocked, so she fled from the car and into the gas station screaming for help. She yelled to the clerk that the men had raped her and planned to kill her. After trying to pull her out of the store, Defendant and the other man ran away.

The three men were later apprehended after a chase with police in Victim's car. After police arrived at the gas station, Victim was taken to a hospital where a rape kit was taken. DNA testing later revealed a mixture of Defendant's DNA and one of his co-defendant's DNA. The next day Victim picked all three men out of three separate lineups.

Defendant waived his right to a jury trial. After a bench trial, the trial court found Defendant guilty of both counts of forcible rape and the associated counts of armed criminal action, both counts of forcible sodomy and the associated counts of armed criminal action, and both counts of robbery with the associated counts of armed criminal action. Defendant was sentenced to life in prison (999 years) for each count of forcible rape and sodomy, fifteen years in prison on each of the six armed criminal action counts, and ten years in prison on both of the robbery counts. The non-sex charges were all ordered to run concurrently with each other, with the sex-related charges to run concurrently with each other, but consecutive to the non-sex charges. This appeal follows.

## II. DISCUSSION

Defendant raises two points on appeal. First, he alleges the trial court plainly erred in convicting and sentencing Defendant on two separate counts of first-degree robbery and the corresponding armed criminal action counts, because this violated Defendant's right to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United

3

States Constitution. Defendant argues that just because some of the stolen property was jewelry and some was currency, this does not give rise to two separate instances of robbery.

Defendant's second point on appeal alleges the trial court plainly erred in imposing the sentences on the sex-related counts to run consecutively to the other counts, violating Defendant's rights to be free from cruel and unusual punishment and to due process, as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and 21 of the Missouri Constitution. Defendant claims that, due to his juvenile status when he was sentenced, the mandatory consecutive sentencing provision violated his constitutional right to individualized sentencing.

Standard of Review

Defendant concedes that neither of his two points on appeal were properly preserved for review. Thus, the only review available to Defendant is for plain error. Rule 30.20. "'[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings.'" State v. Liberty, 370 S.W.3d 537, 546 (Mo. banc 2012) (quoting State v. Wickizer, 583 S.W.3d 519, 523 (Mo. banc 1979)). However, if a double jeopardy claim is determinable from the face of the record, it is entitled to plain error review. Liberty, 370 S.W.3d at 546, citing State v. Neher, 213 S.W.3d 44, 48 (Mo. banc 2007). We will reverse only if we find manifest injustice or a miscarriage of justice has resulted. Rule 30.20.

Point I: Charging Defendant with Two Counts of Robbery Violated Double Jeopardy

4

In his first point, Defendant alleges the trial court erred in convicting and sentencing him on two separate robbery charges, instead of just a single charge, in violation of his right to be free from double jeopardy.

The Fifth Amendment to the United States Constitution provides no person "shall be subject for the same offense to be twice put in double jeopardy of life or limb." This constitutional protection also extends to prohibit multiple punishments from being inflicted for the same crime, barring "the state from splitting a single crime into separate parts and then prosecuting the offense in piecemeal." State v. Nichols, 865 S.W.2d 435, 437 (Mo. App. E.D. 1993).

Our review must focus on the conduct the legislature intended to proscribe under the relevant statute, and determine "'whether cumulative punishments were intended by the legislature.'" State v. Liberty, 370 S.W.3d 537, 546-47 (Mo. banc 2012) (quoting State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992)). To determine legislative intent, we must look to the "'unit of prosecution' allowed by the statute[] under which the defendant was charged." Liberty, 370 S.W.3d at 547, quoting State v. Sanchez, 186 S.W.3d 260, 267 (Mo. banc 2006). "If a charging statute does not express unambiguously the permissible 'unit of prosecution,' the rule of lenity resolves doubts about the intended unit in favor of the defendant and dictates that a single criminal transaction should not result in charges for multiple offenses." Liberty, 370 S.W.3d at 547.

The charges at issue were for robbery in the first degree.

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
> (1) Causes serious physical injury to any person; or
> (2) Is armed with a deadly weapon; or
> (3) Uses or threatens the immediate use of a dangerous instrument against any person; or

5

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Section 569.020.1.  "The distinctive characteristic of robbery is 'violence to the victim.'"  State v. Gridiron, 180 S.W.3d 1, 5 (Mo. App. E.D. 2005) (quoting State v. Hayes, 518 S.W.2d 40, 45 (Mo. banc 1975)).  In Gridiron, the concurring opinion takes the analysis even further , stating "the appropriate 'unit of prosecution' for double jeopardy purposes is the person who is subject to the force."  180 S.W.3d at 8 (Cohen, J., concurring).

Applied here, we find that charging and ultimately convicting Defendant of two separate counts of first-degree robbery violated his right to protection from double jeopardy.  Defendant and his accomplices held Victim at gunpoint for the entirety of the night in question.  They forced Victim to obtain money from Owner, and then forcibly took it from her by holding the gun to her head.  Because of that same and continued threat of force, Victim gave the men her jewelry, although she does not remember at what point in the night this occurred.  Only one threat of force was made toward Victim, and it never ceased.  This is not a situation, like in State v. Barber (cited by Respondent), where "the conduct is dissimilar or the actions are separated in time."  37 S.W.3d 400, 404 (Mo. App. E.D. 2001).  Here, there was a singular threat of force, made to a singular victim, resulting in the forcible stealing of both cash and jewelry.  Thus, only one count of robbery in the first degree can be supported by the facts.

We find a manifest injustice occurred when Defendant was charged, convicted, and sentenced on two separate counts of first-degree robbery.  Therefore, Defendant's first point is granted.  Defendant's second conviction of first-degree robbery in Count 13, and the corresponding count of armed criminal action based on that underlying felony in Count 14, are both reversed and both sentences are vacated.

Point II:  Imposition of Consecutive Sentences for Rape and Sodomy not Unconstitutional

6

Defendant's second point on appeal alleges the trial court plainly erred in imposing his sentences for forcible rape and forcible sodomy to run consecutively to his other sentences because this violated his right to be free from cruel and unusual punishment. Defendant again concedes this issue was not properly preserved for appeal, so our review is again limited to a search for plain error, and we will reverse only if we find a manifest injustice or miscarriage of justice has resulted. Rule 30.20.

Defendant attempts to rely on Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 132 S.Ct. 2455 (2012). However, neither case applies to the case at hand.

In Graham, the Supreme Court held that the imposition of a sentence of life-without-parole for a juvenile who committed a nonhomicide offense was unconstitutional. 560 U.S. at 74. However, the Court pointed out that "while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life." Id. at 75.

In Miller, the Supreme Court held that even for juveniles who commit a homicide, a mandatory sentence of life-without-parole is unconstitutional as violating the Eighth Amendment. 132 S.Ct. at 2469. The Court also stated that a trial court must consider the juvenile's youth and circumstances before imposing a life-without-parole sentence for a homicide offense. Id.

Here, Defendant was not sentenced to life-without-parole. Defendant received life sentences on both of his forcible rape counts and both of his forcible sodomy counts. These, as per Section 558.026.1, ran consecutively to the rest of the non-sex related offenses. Defendant attempts to argue that the mandatory imposition of consecutive life sentences here prohibits the trial court from considering Defendant's juvenile status. However, as emphasized in Graham:

7

> [W]hile the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Graham, 560 U.S. at 75.

This is a case where Defendant's crimes can readily be described as "truly horrifying." He and two accomplices forced Victim into her car at gunpoint, drove around for several hours taking turns raping and sodomizing her, and forcibly stole both money and jewelry from Victim.

We find that the trial court's imposition of consecutive life sentences did not constitute cruel and unusual punishment, even when considering Defendant's juvenile status when the crimes were committed. We find the trial court did not plainly err in imposing consecutive life sentences as no manifest injustice or miscarriage of justice occurred. Defendant's second point is denied.

Finally, Defendant requests that we correct the sentence of "Life (999) years" for the two counts each of forcible rape and forcible sodomy to life imprisonment, as that was the oral pronouncement of the sentence. The State agrees the written judgment should be corrected to reflect the trial court's oral pronouncement. The cause is remanded to the trial court to remove the reference to 999 years from the written sentence for the two counts each of forcible rape and forcible sodomy.

### III. CONCLUSION

Defendant's second conviction of first-degree robbery in Count 13, and the corresponding count of armed criminal action based on that underlying felony in Count 14, are both reversed

8

and both sentences are vacated.  Defendant's remaining convictions and sentences are affirmed. However, the cause is remanded to the trial court to correct the written sentence on Counts 3, 5, 7, and 9.

_____
ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J., concurs
Mary K. Hoff, J.,  concurs